(C. D. 285)

PRENSA INSULAR DE PUERTO RICO, INC., *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 20, 1940)

*Antonio Ayuso* for the plaintiff.

*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks* and *Joseph E. Weil*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

KINCHELOE, Judge: This suit involves the dutiable status of 73 rolls of paper of a width of 15½ inches, which was assessed for duty at one-fourth of 1 cent a pound and 10 per centum ad valorem under paragraph 1401 of the Tariff Act of 1930, as "uncoated printing paper, not specially provided for," and is claimed to be free of duty under paragraph 1772 of said act, as "Standard newsprint paper."

Said competing provisions, so far as pertinent, read as follows:

PAR. 1401. * * * all uncoated printing paper, not specially provided for, not including cover paper, one-fourth of 1 cent per pound and 10 per centum ad valorem: * * *.

PAR. 1772. (Free List) Standard newsprint paper.

Fillippe Garcia, business manager since 1937 of Prensa Insular de Puerto Rico, Inc., the plaintiff company herein, appeared as a witness and testified that the Prensa Insular publishes a daily newspaper called El Imparcial, which is a tabloid paper; that the company has been importing rolls of paper 15½ inches in width up to March 14, 1938; that the size of the newspaper is 11½ by 15½ inches; and that the paper in question is imported for printing such newspaper. The witness introduced in evidence a batch of invoices showing that they bought 15½-inch rolls of paper during 1937 and 1938, which were marked Collective Exhibit 1. He also put in evidence several copies of El Imparcial published by his company in 1939, marked Collective Illustrative Exhibit 2. The same witness stated that the New York Daily News is also of the same size as the El Imparcial, and that the latter paper has been published since 1920. But he could not state what width paper it was printed on at that time, nor could he tell whether there was any standard size for tabloid papers.

Antonio Ayuso, president of the plaintiff company, also testified. He stated that his company publishes the El Imparcial, a daily morning tabloid-size newspaper in San Juan, and that it has a circulation throughout the whole Island; that he has been the founder, president, and manager of the said paper since it was started on May 22, 1933; also that the New York Daily News is of the same size as the El Imparcial.

James H. Coy, a witness for the Government, testified that he is vice president in charge of sales of the Flambeau Paper Co., at Port Falls, Wis., and has been for 10 years; that for 15 years prior thereto he was sales manager for the company; that his company manufactures ground wood papers, i. e., papers made from ground wood pulp, mixed with a smaller percentage of sulphite pulp, unbleached; that they manufactured and sold paper similar in composition to Collective Exhibit 2; that in some cases the width was 15½ inches, and wider; that he had occasion to see paper like Collective Exhibit 2 used at and prior to June 17, 1930; that the 15½-inch width was used by sales-book manufacturers for pads and items of that sort, and that he never saw that width used in the printing of newspaper. The witness stated further that he sold newsprint paper at that time in the middle states, and that the term "standard newsprint paper" had a certain designation in the trade prior to June 17, 1930, and that it referred to paper made of about 80 per centum ground wood pulp and 20 per centum unbleached sulphite, of a basis of net weight of 24 to 32 pounds, and used by newspapers in widths of 16 inches and wider; that paper 15½ inches in width was not considered as standard newsprint paper, and that the understanding as given by him was the same throughout the United States.

The Government called as its second witness Paul H. Bull. He testified that he is salesman for the Pejepscot Paper Co., located at Brunswick and Pejepscot, Maine, which has a place of business at New York; that he has been connected with the company for 10 years; that it manufactures newsprint paper and other ground-wood papers; that prior thereto he was employed 2 years as sales manager of the Peshtigo Paper Co., at Peshtigo, Wis., which made sulphite bond paper and glazed tissues; that prior to that he was with the Seeman Paper Co., as salesman for 8 or 9 years, and that it sold book paper, newsprint, lightweight catalog paper, and that before then he was with the Butler Paper Co. of Chicago, as salesman for about 7 years; that it was a jobber which sold all kinds of paper, including newsprint; that it sold paper of like texture and composition to Exhibit 2 on and before June 17, 1930, in Kansas, Nebraska, Missouri, and other large cities in the east; that it sold such size to book manufacturers, and people that print dodgers and throwaways, and also to pencil-pad manufacturers; and that he never saw paper 15½ inches in width used for newspapers. The witness stated further that he had occasion to speak to the various purchasers and prospective customers at that time, and that the term "standard newsprint paper" was understood in the trade to mean paper composed of about 80 per centum ground wood and 20 per centum sulphite, etc., that the width thereof was 16 or 17 inches, and up, and that there was none 15½ inches in width at that time (R. 39).

So far as we can gather from the record, there seems to be no contention by the Government that the quality, composition, or texture of the paper is not the same as that of standard newsprint paper, but only that the width of the paper, namely, 15½ inches, excludes it from that classification under said paragraph 1772.

The question of what does, and what does not come within the tariff designation of "standard newsprint paper" has been before this court and that of our appellate division on several occasions. The case, however, nearest in point, and also controlling in the present instance, is that of *United States* v. *Tower & Sons*, 26 C. C. P. A. 1, T. D. 49534. In that case, paper of the exact weight, texture, composition, and quality as, and similar in every respect to paper conceded to be standard newsprint paper, except that the rolls were only 15 inches wide, was assessed for duty under paragraph 1401 of the act of 1930, as uncoated printing paper, and was claimed to be free of duty under paragraph 1772, as in the present instance. In that case it was shown that the paper there in issue, when given a newspaper use, was used in the printing of special sections of regular daily newspapers or special weekly publications, but was not shown to belong to a class or standard of newsprint paper which was chiefly used for printing newspapers on and prior to the enactment of the Tariff Act of 1930.

The appellate court, in overruling the contention of the plaintiff, held that "standard newsprint paper" is a designation by use, and that in determining the meaning of an *eo nomine* designation, which meaning is determined by its use, that meaning must be determined in accordance with its proven chief use on and prior to the date when the term was used by Congress, and, further, that while it is not improper to consider the use of the instant importation of paper for the purpose of determining its character, such use is not controlling of its classification. Note also *United States* v. *Myers & Co.*, 24 C. C. P. A. 464, T. D. 48913.

The testimony introduced by plaintiff's two witnesses simply shows that the publication of the daily tabloid newspaper El Imparcial was started in San Juan in May 1933, and that it has been printed on paper of a width of 15½ inches from that time up to March 14, 1938, and that the El Imparcial is of the same size as the New York Daily News. Obviously this entirely fails to prove that paper of the width and kind in issue was, prior to the enactment of the Tariff Act of 1930, or at any other time, chiefly used for printing newspapers. In other words, it entirely fails to meet the proof called for under the *Tower* case, *supra*.

On the other hand, the testimony of the defendant's two witnesses—men of long and extensive experience in the newsprint paper business, as manufacturers and sellers—testified that the term "stand-

ard newsprint paper'' had a certain definite meaning in the trade at the time of the passage of the tariff act, and that paper of the width of 15½ inches was not considered standard newsprint paper, and that paper of like texture, composition, and width as that in question was sold to book manufacturers, and to people that print such things as dodgers and throwaways, and for pencil pads. Also that they never saw paper 15½ inches in width used for newspapers, and that there was no such width newsprint paper at that time.

On the record thus presented we think the plaintiff has clearly failed to overcome the presumption of correctness in favor of the collector's classification of the merchandise and the assessment of duty thereon. The claim of the plaintiff is therefore overruled. Judgment will be rendered accordingly.